IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America ) | CR/A No. 4:18-cr-00089-DCC-1 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Leroy Anthony Griffin ) | |
| ) | |
| _____ ) | |

This matter comes before the Court on Defendant's Pro Se Motion for Compassionate Release and counseled Response in Support thereof, seeking reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF Nos. 178, 180, 181, 183, 187, 193, 194. The Government filed two Responses in Opposition. ECF Nos. 184, 197. Defendant filed a Pro Se Reply to the Government's Response. ECF No. 186. For the reasons set forth below, the Motion is denied.

## BACKGROUND

Mr. Griffin pleaded guilty on January 24, 2019, to Count 1 of the indictment, conspiracy to possess with the intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ECF No. 133. On July 11, 2019, he was sentenced to 110 months of imprisonment and six years of supervised release. ECF Nos. 147, 148. Mr. Griffin filed his Pro Se Motion for Compassionate Release on February 22, 2021. ECF No. 178. The Court appointed counsel on May 18, 2021. ECF No. 188. Following briefing by the parties, the Motion is now before the Court.

## APPLICABLE LAW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) permits modification of a term of imprisonment upon motion of the defendant after exhaustion of

the defendant's administrative remedies.  If "extraordinary and compelling reasons" warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission,"[1] the court may reduce a defendant's term of imprisonment and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment.  *Id*.  The statute further instructs the court to "consider[] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  *Id*.; *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (noting "a district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)" without considering the § 3553(a) factors).  Therefore, in order to grant compassionate release pursuant to § 3582(c)(1)(A)(i), the district court must (1) find that "extraordinary and compelling reasons" warrant a reduction in the prisoner's sentence, and (2) consider the applicable § 3553(a) factors in light of the prisoner's extraordinary circumstances.[2]  *Kibble*, 992 F.3d at 330, 332.

---

[1] Although U.S.S.G. § 1B1.13(1)(A) is entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," by its terms it addresses only those requests brought "[u]pon motion of the Director of the Bureau of Prisons."  It is therefore inapplicable to compassionate release motions filed by defendants pursuant to § 3582(c)(1)(A)(i). *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (citing *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020)).  Because no applicable sentencing guideline exists, "§ 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  *Id*.

[2] Because the statute "does not specify what conclusion a district court must draw from the § 3553(a) factors in order to grant a motion for compassionate release," the Fourth Circuit has understood this language "as providing district courts with procedural guardrails for exercising their discretion, not creating a substantive prerequisite to compassionate release."  *Kibble*, 992 F.3d at 331 n.3.

**DISCUSSION**

*Exhaustion*

The First Step Act requires defendants to exhaust their administrative remedies before moving the Court for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). To satisfy the exhaustion requirement, "incarcerated persons must first ask the [Bureau of Prisons ("BOP")] to file a motion for compassionate release on their behalf, and then, either (1) appeal the BOP's failure to bring a motion on their behalf, or (2) allow 30 days to lapse after making the request[.]" *Kibble*, 992 F.3d at 330 n.2.

Mr. Griffin wrote to the Warden requesting compassionate release on January 4, 2021. ECF Nos. 178-2, 184-1. The Warden denied his request on March 2, 2021. ECF No. 184-1. The Court accordingly finds that Mr. Griffin properly exhausted his administrative remedies and continues to the merits of his Motion.

*Extraordinary and Compelling Reasons*

Mr. Griffin argues that he is at increased risk from COVID-19 due to his health conditions, specifically acute bronchitis, obesity, and his history of smoking.[3] Courts in this district and elsewhere have found, particularly at the height of the pandemic, that the

---

[3] Mr. Griffin also bases his request for compassionate release on the following additional preexisting medical conditions: migraine, pulpitis, acute apical periodontitis of pulpal origin, atopic dermatitis, and acute laryngopharyngitis. The Court notes, however, that these conditions are not generally recognized as causing an increased risk of serious illness from COVID-19 according to the Centers for Disease Control and Prevention. *See COVID-19, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021). Mr. Griffin states in an additional attachment to his motion that he has asthma and uses an inhaler. Although the CDC indicates that moderate-to-severe asthma can create an increased risk of serious illness from COVID-19, Mr. Griffin does not allege that his condition is moderate-to-severe nor is there any mention of asthma in his provided medical records. *See id.*

3

COVID-19 pandemic may constitute an extraordinary and compelling reason to reduce a defendant's sentence in conjunction with specific risk factors such as age or medical condition. *See*, *e.g.*, *United States v. Griggs*, 462 F. Supp. 3d 610, 620 (D.S.C. 2020); *United States v. Bing*, CR/A No. 1:15-cr-0637-JMC-1, 2020 WL4043610, at *6 (D.S.C. July 17, 2020). Moreover, the Centers for Disease Control and Prevention ("CDC") have identified obesity and severe obesity (defined as body mass index ("BMI") ≥30 kg/m$^2$ and ≥40 kg/m$^2$, respectively)[4] and a history of smoking as conditions that "can make you more likely to get severely ill from COVID-19." *See COVID-19*, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).[5]

However, additional, countervailing considerations lead the Court to find that no extraordinary and compelling reason for a reduction of sentence exists in this case. The Court takes note that the number of COVID-19 cases have surged in recent months due to the increasing spread of the Delta variant. *See COVID Data Tracker Weekly Review*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last updated Sept. 24, 2021). However, in the absence of evidence suggesting a particular risk of infection at the facility where a defendant is housed, and in light of the fact that

---

[4] In addition, the Court notes Mr. Griffin's body mass index of 30.6 falls within the low range of the obesity category, as a body mass index of 30.0 and above is considered obese. *See About Adult BMI*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#Interpreted (last visited Sept. 16, 2021).

[5] Although the CDC identifies chronic bronchitis as a medical condition that can make a person more likely to become severely ill from COVID-19, Mr. Griffin's medical record indicates he suffers from acute bronchitis, which has been in remission since February 19, 2020.

4

highly effective vaccines are now readily available to protect against contracting COVID-19 and enduring serious complications, the COVID-19 pandemic may no longer constitute an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions.

Here, Mr. Griffin's health conditions do not appear to be of sufficient severity to warrant early release. Mr. Griffin is only thirty-three years old, and BOP Health Services records indicate that he is receiving treatment for his medical conditions.

Further, Mr. Griffin was offered the Pfizer-BioNTech vaccine against COVID-19 on April 29, 2021, and June 10, 2021, but refused vaccination and declined to sign the form indicating his refusal on both occasions. ECF No. 197-1. "Most courts have held vaccine refusal against defendants moving for compassionate release." *United States v. Greenlaw*, 2021 WL 1277958, at *6 (D. Me. Apr. 6, 2021) (collecting cases). Courts within this circuit have done the same. *See*, *e.g.*, *United States v. Hargrove*, 2021 WL 2210844, at *4 (W.D.N.C. June 1, 2021) (finding the defendant's obesity "no longer qualifies as an 'extraordinary and compelling reason' here because Defendant has refused to be vaccinated"); *United States v. Jacobs*, 2021 U.S. Dist. LEXIS 92819, at *2 (W.D.N.C. May 17, 2021) (denying compassionate release where defendant refused COVID-19 vaccine and noting that "Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus" (quoting *United States v. Williams*, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021)).

The undersigned agrees with the great weight of authority that Mr. Griffin's voluntary refusal of a safe and effective vaccine[6] must be considered as a factor in determining whether extraordinary and compelling reasons warrant his release. The Court cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while simultaneously refusing a highly effective medical intervention to reduce that risk. In short, Mr. Griffin may not manufacture his own "extraordinary and compelling" circumstances.[7] *See, e.g., Greenlaw*, 2021 WL 1277958, at *7 ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [him] to refuse COVID-19 vaccines and put their lives and

---

[6] The efficacy of the Pfizer vaccine against confirmed COVID-19 in individuals of Mr. Griffin's age group (16 to 55 years) has been estimated at 95.6%. *See Pfizer-BioNTech COVID-19 Vaccine Emergency Use Authorization Review Memorandum*, Food and Drug Administration, available at https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine (Dec. 11, 2020).

[7] Although Mr. Griffin has already had COVID-19, the CDC recommends that people who have contracted the virus and recovered should still be vaccinated because "[r]esearch has not yet shown how long they are protected from getting COVID-19 again after recovering from the virus," and "[v]accination helps protect people even if they have already had COVID-19." *See Frequently Asked Questions about COVID-19 Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last updated Sept. 24, 2021). In fact, "[e]vidence is emerging that people get better protection by being fully vaccinated compared with having had COVID-19." *Id.*

In addition, the CDC instructs that people with COVID-19 symptoms should wait to be vaccinated until they have recovered from their illness and have met the criteria for discontinuing isolation. *Id.* For those with symptoms, they can discontinue isolation after (1) ten days since symptoms first appeared; (2) twenty-four hours with no fever without the use of fever reducing medications; and (3) other symptoms of COVID-19 are improving. *See Quarantine and Isolation*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last updated Sept. 18, 2021). For those without symptoms, they can discontinue isolation after ten days have passed since they had a positive viral test for COVID-19. *Id.* Because Mr. Griffin purportedly contracted COVID-19 in August 2020, he has been eligible to receive a vaccination according to the CDC's guidance.

the lives of others in jeopardy in an effort to bolster their compassionate release motions.").

Finally, the Court notes that Federal Correctional Institution ("FCI"), Bennettsville, the facility at which Mr. Griffin is housed, currently reports fourteen COVID-19 infections among its 1,548 inmates and two cases among its staff.  *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last accessed Sept. 27, 2021).  This level of infection does not reflect a significant risk to Mr. Griffin, even in light of his unvaccinated status.  Indeed, in light of current infection statistics and low vaccination rate in the general population of South Carolina, an argument could be made that Mr. Griffin is at lower risk in the controlled environment of FCI Bennettsville.  *See United States v. Morgan*, 473 F.Supp.3d 544, 551 (D.S.C. 2020) ("It would not be prudent at this juncture for the court to release defendant to a location where the daily cases of COVID-19 is insidiously mounting when his current prison setting has very few active cases, the state where he is located is trending in a positive direction, and . . . there [is] every indication that [the detention facility] is prepared to adequately treat any inmates who test positive for COVID-19."); *Tracking Coronavirus in Florence County, S.C.*, https://www.nytimes.com/interactive/2021/us/florence-south-carolina-covid-cases.html (last updated Sept. 27, 2021) (noting "Florence County is at an extremely high risk level for unvaccinated people because there was an average of 84 cases per 100,000 people reported in the past two weeks"); *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus (last accessed Sept. 24, 2021) (noting FCI Bennettsville has vaccinated 975 inmates, resulting in a vaccination rate of over 60% of the facility's inmates); *COVID-19 Vaccination Dashboard*, https://scdhec.gov/covid19/covid-19-

7

data/covid-19-vaccination-dashboard (last updated Sept. 22, 2021) (indicating only 51.2% of eligible South Carolina residents have completed vaccination for COVID-19).

After careful consideration of Mr. Griffin's medical record, therefore, the Court finds that the overall circumstances do not constitute an extraordinary and compelling reason warranting his early release.[8]

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Compassionate Release [178] is **DENIED WITHOUT PREJUDICE**. Mr. Griffin is free to file a renewed motion in the event of a material change in circumstances warranting a reduction of his sentence.

IT IS SO ORDERED.

                                                         s/ Donald C. Coggins, Jr.
                                                         United States District Judge

September 27, 2021
Spartanburg, South Carolina

---

[8] To the extent Mr. Griffin seeks an order directing the BOP to place him on home confinement, this request is likewise denied. *See United States v. Colleton*, 2020 WL 7352577, at *3 (D.S.C. Dec. 15, 2020) ("This court lacks authority to order home confinement because the authority to make placement decisions is vested solely with the BOP."); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]").